**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**MALCOLM PHINNEY** **PLAINTIFF**

**v.** **No. 4:23-cv-1095-DPM**

**GREENWOOD MOTOR LINES, INC., d/b/a R+L Carriers and MATTHEW DAKUS** **DEFENDANTS**

# ORDER

Malcolm Phinney was injured in a bad wreck in November 2021. Matthew Dakus, driving a Greenwood Motor Lines tractor-trailer, sped into a construction zone, missed various warning signs, and caused the multi-vehicle pileup. At least two lawsuits resulted. One of them, *Crosby v. Greenwood Motor Lines, Inc.*, No. 4:22-cv-557-KGB, settled right before trial in August 2024. Phinney filed this suit in the fall of 2023. It has been vigorously litigated. The current issue is a spoliation accusation. The Court thanks Phinney's counsel for providing a detailed timeline.

Well before filing this suit, Phinney's lawyers zealously pursued potential discovery. In May 2022, counsel sent a preservation letter to Greenwood.[1] The lawyers requested that the company preserve, among other things, all electronically recorded data from the

---

[1] *Doc. 188 Ex. 1.*

tractor-trailer.[2] After filing his case in November 2023, and as it progressed, Phinney continued to request all electronically stored information about the accident and Dakus's driving record.[3] The requests were repeated, vigorous, and thorough.

Greenwood works with Lytx, a third-party monitoring system. Lytx uses outward-facing cameras on Greenwood's tractor-trailers.[4] This equipment records and monitors what happens on the road.[5] Certain driving events trigger the system: for example, following another vehicle too closely.[6] The triggering event, and a video recording of it, are then reviewed by Lytx.[7] After that triage, they're sent to the service center where Greenwood's driver is domiciled.[8] If the infraction is serious enough, or there's a pattern of infractions, the driver may get a talking-to and safety coaching.[9]

In the middle of the litigation about this 2021 accident, and unbeknownst to Greenwood's lawyers, the trucking company ordered Lytx to change Greenwood's retention policy for its driver's driving

---

[2] *Ibid.*

[3] *E.g., Doc. 29-1 at 4; Doc. 96-1 at 5–10; Doc. 96-5 at 4–5, 7 & 9–10; Doc. 96-7 at 17–18; Doc. 96-12 at 9–10, 13, 15, 19 & 55–56; Doc. 188 Ex. 2–5 & 7–10.*

[4] *Doc. 96-12 at 17.*

[5] *Doc. 96-7 at 5.*

[6] *Doc. 96-12 at 9.*

[7] *Ibid.*

[8] *Ibid.*

[9] *Ibid.*

event data and metadata.[10] When Phinney's accident happened in November 2021, Greenwood's policy was to retain driving video clips for one year, plus to retain event and GPS data, and metadata indefinitely.[11] The video clips eroded, and expanded, day by day so that one year of video history always existed. Then, in October 2024, after this case had been in motion for almost a year, Greenwood started asking Lytx about decreasing the retention time.[12] And in the summer of 2025, Greenwood made changes.[13] The new policy: driving video clips are deleted after sixty days; and event data and metadata are disassociated from the drivers and tractor-trailers after sixty days, too.[14] Greenwood implemented its new policy retroactively.[15] The company did not carve out unproduced Dakus-related materials. It's now impossible to recover any of those materials.[16]

Lytx recommended not deleting the videos and not disassociating the event data and metadata.[17] It warned Greenwood that this new policy could affect overall safety reporting data.[18]

[10] *Doc. 177 at 19.* Citations to *Doc. 177* use the deposition's pagination.
[11] *Doc. 96-7 at 17–18.*
[12] *Doc. 177 at 22.*
[13] *Doc. 177 at 57–58.*
[14] *Ibid.*
[15] *Doc. 178-31, 178-32 & 178-33.*
[16] *Doc. 177 at 33.*
[17] *Doc. 178-8, 178-9, 178-40 & 178-42.*
[18] *Doc. 178-8 & 178-9; see also Doc. 177 at 42.*

Greenwood persisted. In an August 2025 e-mail,[19] Greenwood's vice president of safety Gerald Krisa explained the new policy's why: "Today's Plaintiff's Attorneys are taking every opportunity to discredit Motor Carriers and make every attempt to elevate settlements and verdicts to the nuclear level. In our opinion, retaining the data simply enables the malice Plaintiff's Attorneys feed on."[20]

By this point in the summer of 2025, Greenwood had produced to Phinney the GPS data and dash cam footage from the accident.[21] It had also produced Lytx's metadata from that event.[22] Plus, it had produced seven days' worth of Dakus's driver's logs.[23] The company knew Dakus's driving history was a focal point. But Greenwood made no effort to retain Dakus's historical Lytx information—despite the accident, Phinney's May 2022 pre-suit preservation letter, the filing of the *Crosby* case in June 2022, the filing of this case in November 2023, and comprehensive discovery requests for Dakus-related electronic information.

---

19 The Court has allowed many things to be filed under seal in this case. It's working on an Order about final redactions. This e-mail, though, is an essential part of the Court's ruling on spoliation and needs to be part of the public record.

20 *Doc. 178-41.*

21 *Doc. 103 at 21–22.*

22 *Doc. 177 at 104–05.*

23 *Doc. 103 at 65.*

If Greenwood's preservation obligation arose when the company got the preservation letter, then approximately six months' worth of video clips, and thirty months' worth of Dakus's Lytx event data and metadata (except for information about the accident itself) should have been saved but weren't.[24] If Greenwood's preservation obligation arose when *Crosby* was filed, one month less of video and all the event data and metadata should have been saved but weren't. Even if the day-by-day erosion of the video clips pursuant to Greenwood's former policy was negligent rather than intentional, the disassociation of Dakus's event data and metadata in the middle of this case was done in bad faith. *Stevenson v. Union Pacific Railroad Co.*, 354 F.3d 739, 746–47 (8th Cir. 2004); *Morris v. Union Pacific Railroad*, 373 F.3d 896, 902 (8th Cir. 2004). Vice President Krisa's after-the-fact affidavit says that the Lytx data was not intentionally destroyed and disassociated.[25] As to the Dakus event data and metadata, this is not credible.

How long to retain business records is, in general, entirely within a company's discretion. But maintaining requested records about key disputed matters in pending litigation is a legal obligation. Fed. R. Civ. P. 37(e)(1); *Stevenson, supra*. As part of its policy change, Greenwood intentionally destroyed evidence to suppress the truth and prevent its availability for production in this case. *Stevenson, supra*. The company

[24] *Doc. 188 Ex. 1; Doc. 96-24 at 94.*

[25] *Doc. 190-2.*

also dragged its feet in producing Dakus's driving violation log. In response to all this, Phinney seeks nuclear sanctions. The Court declines his request to pause this case, reopen discovery, redo expert reports, and restart the litigation.[26] Given all the material circumstances, however, some sanctions are warranted.

First, the Court is inclined to impose sanctions because of Greenwood's intentional frustration of the administration of justice under law. *Stevenson*, 354 F.3d at 745. The Court will therefore consider a monetary penalty to vindicate the search for truth through the Federal Rules. Fed. R. Civ. P. 1 and 2015 addition to advisory committee notes; Fed. R. Civ. P. 37(c)(1). Second, whether Phinney is entitled to an adverse-inference instruction requires a bit more analysis.

*

Both Greenwood and Dakus have admitted their negligence.[27] They contend this admission cures any potential prejudice, eliminating the need for any further sanction. Negligence has four parts: duty, breach, proximate cause, and damages. *Union Pacific Railroad Co. v. Sharp*, 330 Ark. 174, 180, 952 S.W.2d 658, 661 (1997). Greenwood and Dakus admitted that Dakus's negligent operation of the tractor-trailer was the proximate cause of the November 2021 accident.[28]

---

[26] *E.g., Doc. 192 at 10.*

[27] *Doc. 187.*

[28] *Doc. 187 at 1.*

Greenwood also "admits it was negligent in its implementation of its policies and procedures related to distracted driving as to Dakus."[29] Greenwood did not admit that its independent policies-and-procedures negligence also proximately caused the accident.

But Greenwood has taken full responsibility for Dakus's actions, and the company's actions and inactions related to his driving.[30] As the Court sees Phinney's still-disputed policies-and-procedure claim, it is about the company's safety-related conduct independent of Dakus's negligence. *E.g., Doc. 124 at 6–8* in *Regions Bank v. White*, No. 4:06-cv-1475-JLH (E.D. Ark. 24 September 2009); *Doc. 42 at 3–5* in *Crouch v. Master Woodcraft Cabinetry, LLC*, No. 2:20-cv-78-KGB (E.D. Ark. 13 September 2021); *Doc. 189 at 7–9* in *McLane v. Rich Transport, Inc.*, No. 2:11-cv-101-KGB (E.D. Ark. 9 August 2012). Unless the destroyed evidence could have shown that—independent of Dakus—Greenwood's safety-policy negligence could have been a proximate cause of this accident, Phinney isn't entitled to an adverse-inference instruction about that destroyed evidence. *Swift Transportation Co. of Arizona, LLC v. Angulo*, 716 F.3d 1127, 1135 (8th Cir. 2013). No such showing has been made. There's no indication the evidence Phinney would have discovered about any

---

[29] *Ibid.*

[30] *Doc. 187.*

unsafe driving patterns by Dakus, but for Greenwood's intentional destruction of evidence, would support Phinney's independent policies-and-procedures claim. In a word, there's no prejudice to Phinney on the liability issue left for the jury's decision. Fed. R. Civ. P. 37(e)(1); *Stevenson*, 354 F.3d at 748.

*

In its April bench ruling on punitive damages, the Court assumed there had been spoliation. Even so, the Court dismissed Phinney's punitive damages claim. Phinney argues hard that the Court should revisit and reverse its decision on that issue. With the benefit of focused briefing on spoliation, the Court has reconsidered. It stands by its decision.

In vehicle accident cases, Arkansas courts have allowed punitive damages claims to go to the jury when there's racing, drinking, drug-related impairment, or similar egregiously reckless conduct. *Turner v. Rosewarren*, 250 Ark. 119, 125–26, 464 S.W.2d 569, 572–73 (1971); *Honeycutt v. Walden*, 294 Ark. 440, 442, 743 S.W.2d 809, 810 (1988); *National Bank of Commerce v. McNeill Trucking Co., Inc.*, 309 Ark. 80, 88, 828 S.W.2d 584, 588 (1992) (Dudley, J. concurring); *D'Arbonne Construction Co. v. Foster*, 354 Ark. 304, 308–12, 123 S.W.3d 894, 898–901 (2003). Otherwise, these claims don't go forward. *Alpha Zeta Chapter of Pi Kappa Alpha Fraternity by Damron v. Sullivan*, 293 Ark. 576, 585, 740 S.W.2d 127, 132 (1987); *Elrod v. G & R Construction*

*Co.*, 275 Ark. 151, 155, 628 S.W.2d 17, 19 (1982); *National By-Products, Inc. v. Searcy House Moving Co.*, 292 Ark. 491, 494–95, 731 S.W.2d 194, 196–97 (1987).

At the motion hearing, Phinney pressed that the combination of circumstances here echoes *D'Arbonne*. He argued that leaving Dakus behind the wheel was the functional equivalent of what happened there: the trucking company tampering with the failing brakes and keeping the truck on the road. But Dakus being a careless driver is not enough for punitive damages. There must be clear and convincing evidence of reckless disregard of danger such that malice can be inferred. *D'Arbonne*, 354 Ark. at 308, 123 S.W.3d at 898. The kind of information that Phinney says he could have discovered from the destroyed evidence—Dakus's full driving violation history—doesn't rise to that level.[31] Discovery has been broad and deep. There's no other record indication that Dakus ever drove under the influence, drag raced, or engaged in any similar egregious behavior. The evidence about him likely playing a music video on his phone approximately three minutes before the accident comes close, but does not clear Arkansas law's high bar. And the now-missing Lytx data would not have captured past conduct of that kind in any event. The Court declines to put punitives back in the case.

---

[31] *Doc. 191 at 6–7.*

*

Motion, *Doc. 189*, partly granted and mostly denied as specified. The Court declines to impose Phinney's requested pause-and-redo-the-case sanction. The negligence admission moots the need for the adverse-inference jury instruction that would otherwise be justified on Dakus's negligence and Greenwood's *respondeat superior* liability. Greenwood must show cause why it should not face monetary sanctions for destroying and disassociating the Dakus-related Lytx event data and metadata during this litigation. To help in deciding the amount of any sanction, the company must file current financial information *ex parte* and under seal by 14 August 2026. The company may also respond further on this sanction possibility by that date.

So Ordered.

D.P. Marshall Jr.
United States District Judge

6 August 2026